J-S28016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ROBERT LEO BOLIN III :
:
Appellant : No. 515 MDA 2022

Appeal from the Judgment of Sentence Entered November 12, 2021
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000108-2021

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: DECEMBER 2, 2022**

Robert Leo Bolin, III appeals from the judgment of sentence entered after a jury found him guilty of crimes involving a minor: involuntary deviate sexual intercourse with a child, unlawful contact with minor, aggravated indecent assault of complainant less than 13 years of age, indecent assault of complainant less than 13 years of age, and corruption of minors.[1] He challenges the weight of the evidence. We affirm.

The trial court summarized the factual and procedural history, which we adopt and incorporate herein. Trial Court Opinion, filed May 5, 2022, at 1-4 ("1925(a) Op."). We will provide a summary. Bolin lived with J.H. and J.H.'s mother, J.B., for approximately eight years and J.H. referred to Bolin as "dad." N.T., Aug. 2, 2021, at 23-24. J.H. testified that she had trouble sleeping one

_____

[1] 18 Pa.C.S.A. §§ 3123(b), 6318, 3125(a)(7), 3126(a)(7), and 6301(a)(1)(ii), respectively.

night and she went downstairs to lay on the couch, where Bolin was sitting and his daughter, G., was sleeping. *Id.* at 26-28. J.H. testified that as she was lying on the couch, she felt Bolin move aside her shorts and underwear and penetrate her external genitals with his finger and his tongue. *Id.* at 31-36. She stated that when Bolin saw J.H. open her eyes, he stopped. *Id.* at 36.

Bolin testified in his own defense that J.H came downstairs when he was watching television, and five minutes later G. came down. N.T., Aug. 3, 2021, at 270-71. He said that J.H. had her legs on his lap, but eventually one of her legs moved on to the back of the couch, and her foot was behind his head. *Id.* at 272. He stated he started to get tired and laid his head between J.H.'s legs, and "gave her a peck on her thigh when [he] laid his head down." *Id.* at 273. He further stated that before he put his head down, he "scoot[ed] her and push[ed] her forward a little bit with [his] hand." *Id.* at 280. He testified that a few seconds later she went upstairs. *Id.* at 273.

An expert witness testified for the Commonwealth that serological analysis detected the presence of body fluids on J.H.'s underwear and an analysis of a cutting from J.H.'s underwear and of an external genital swab conducted on J.H. indicated Bolin as a likely contributor of the Y chromosome DNA found. N.T., Aug. 3, 2021, at 144, 196-199. On cross-examination, the expert agreed that the transfer of DNA to clothes while folding laundry was a possibility. *Id.* at 216.

A jury found Bolin guilty of all charges. The trial court sentenced him to an aggregate term of 15 to 30 years' incarceration followed by three years'

probation. Bolin filed a post-sentence motion, which the trial court denied on March 3, 2022. Bolin filed a notice of appeal.

Bolin raises the following issues:

> A. Did Bolin timely file a notice of appeal?
>
> B. Did the trial court abuse its discretion when it denied Bolin's post-sentence motion for new trial on grounds that the jury's verdict was against the weight of the evidence?

Bolin's Br. at 4.[2]

We first address whether the appeal is timely. The court sentenced Bolin on October 26, 2021.[3] Bolin filed a post-sentence motion that was received on November 5, 2021 but not docketed until November 8, 2021. The motion challenged the verdicts as against the weight of the evidence. In March 2022, the court denied the post-sentence motion, and Bolin appealed.

This Court issued a rule to show cause why the appeal should not be dismissed as untimely, noting that the docket indicated Bolin filed his post-sentence more than ten days after the entry of the judgment of sentence, and untimely post-sentence motions do not toll the 30-day appeal period. Order, filed May 5, 2022 (citations omitted). Bolin filed a response stating he electronically filed the post-sentence motion on November 5, 2021, which was

---

[2] The Commonwealth did not file an appellate brief.

[3] On November 12, 2021, the trial court entered an amended sentencing order, wherein it only corrected the subsection under which Bolin had been convicted for corruption of minors and stating that "[a]ll other aspects of th[e] Court's Sentencing Order of October 26, 2021 shall have full force and effect." Amended Order of Court, filed Nov. 12, 2021.

within the ten-day period for the filing of a post-sentence motion. Appellant's Answer to Order to Show Cause, at ¶ 3. He attached to his response the time-stamped copy of his post-sentence motion and the email reflecting the filing of the post-sentence motion, both of which show he filed the motion on November 5, 2021.

Because Bolin filed his post-sentence motion on November 5, 2021, within ten days of the judgment of sentence, the filing tolled the appeal period. *Commonwealth v. Green*, 862 A.2d 613, 618 (Pa.Super. 2004) (*en banc*) ("[T]he time for filing an appeal can be extended beyond 30 days after the imposition of sentence only if the defendant files a timely post-sentence motion."). Bolin therefore properly filed his notice of appeal within 30 days of the entry of the order addressing his post-sentence motion. *See* Pa.R.A.P. 720(A)(2). His appeal is timely.

Before this Court, Bolin challenges the trial court's rejection of his weight claim. He argues the Commonwealth's physical proof was "beyond weak." Bolin's Br. at 17. He claims the DNA expert could not identify the type of cell from which the male DNA profile at issue came and it was not "implausible, based on the Commonwealth's expert-witness testimony, that Bolin's DNA profile ended up on the underwear, because Bolin "handled the laundry." *Id.* at 17-18. He further challenges the evidence regarding the underwear and whether the clothing was worn by J.H. when the alleged incident occurred as "incredibly weak," noting the testimony differed as to when the underwear was transferred to the police. *Id.* at 18. He further argues he lived with J.H.

for eight years without any reported incidents and he gave a "valid and justified reason" for the events. *Id.* He claims his version was "more detailed" than J.H.'s version and J.H. had an opportunity to discuss the allegations with J.B. *Id.* at 19.

A weight claim is for the trial court in the first instance. *See Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016). The trial court may sustain a weight challenge and grant a new trial only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (quoting *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999)). We review the trial court's rejection of a challenge to the weight of the evidence for an abuse of discretion. *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017).

The trial court found the verdict was not against the weight of the evidence. It noted Bolin's "protestations of innocence" do not render the verdict against the weight of the evidence, and the jury was entitled to judge the credibility of the witnesses and resolve any conflicts in the testimony. It further noted J.H.'s "strong emotional reaction to the assault," and that she reported the assault within a day. 1925(a) Op. at 11-12. The court found the

conflicting evidence regarding J.H.'s underwear did not result in a verdict that was against the weight of the evidence, noting the jury was entitled to believe Bolin was guilty regardless of inconsistent testimony. The court pointed out that DNA consistent with Bolin's profile was found on J.H.'s external genitals, which corroborated J.H.'s account. *Id.* at 12.

After review of the briefs, the trial court record, the relevant law, and the well-reasoned opinion of the Honorable Shawn C. Wagner, we conclude the court did not abuse its discretion in denying the motion challenging the weight of the evidence and affirm on the basis of the trial court's opinion. *Id.* at 11-13.

In his Rule 1925(b) statement, Bolin challenged the sufficiency of the evidence supporting his unlawful contact conviction. Defendant's Statement of Errors Complaint of on Appeal, filed Mar. 31, 2022. In its 1925(a) opinion, the trial court agreed with Bolin, and requested that we vacate the conviction and remand for resentencing. 1925(a) Op. at 10. However, Bolin did not include in his appellate brief a challenge to the sufficiency of the evidence. Bolin's Br. at 4. He therefore has abandoned the claim. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Bolin's counsel seems to believe that the trial court vacated the conviction. *See* Bolin's Br. at 6, 20 (noting trial court agreed there was insufficient evidence supporting unlawful contact conviction and requesting that this Court "reverse and vacate [Bolin's] judgment of convictions and sentence and remand for a new trial on all

charges, less the charge for unlawful contact – the conviction for which was vacated due to insufficient evidence"). By the time the court issued its Rule 1925(a) opinion, it had lost jurisdiction to vacate any of the convictions or amend the sentence. *See* Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."); 42 Pa.C.S.A. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.") Because Bolin did not raise his sufficiency claim before us, we cannot review the claim to determine whether the evidence supported the conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2022



IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
CRIMINAL

**COMMONWEALTH OF PENNSYLVANIA**　　　　　　**CP-01-CR-108-2021**

**VS.**

**ROBERT LEO BOLIN III**

<u>**OPINION PURSUANT TO Pa. R.A.P. 1925(a)**</u>

Robert Leo Bolin III (hereinafter "Appellant") appeals from this Court's October 26, 2021 Sentencing Order. For the reasons set forth herein, it is respectfully requested that the Court reverse Appellant's sentence for unlawful contact with a minor and remand for resentencing but deny Appellant further relief.

This case arises from Appellant's June 3, 2020 sexual assault against his minor victim, J.H. (hereinafter "Victim"), the biological daughter of Ms. Jodi Bunty (hereinafter "Ms. Bunty"), Appellant's former paramour. Appellant and Ms. Bunty had been in a relationship for approximately eight years before the incident. Victim, who referred to Appellant as her "dad," was approximately two years old when Appellant and Ms. Bunty's relationship began. At the time of the assault, Victim was nine years old.

Appellant, Ms. Bunty, Appellant's two biological children, and two of Ms. Bunty's biological children, including Victim, resided at 211 North Berlin Avenue in New Oxford, Adams County, Pennsylvania. Appellant was primarily responsible for doing the laundry at the residence. The residence had several bedrooms, all of which were on the second floor of the house. Appellant and Ms. Bunty shared a bedroom, Appellant's biological son had his own bedroom, and Victim shared a bedroom with her stepsister, G., who was

Appellant's biological daughter. The house had a downstairs living room with a television, a recliner, and a large couch.

On the night of June 3, 2020, Appellant sexually assaulted Victim while she was lying on the couch in the living room. That night, Victim had trouble sleeping in her bedroom on the second floor, so she went downstairs and lay down on the couch, upon which Appellant was sitting and G. was sleeping. At that point, G. was sleeping on the right side of the couch, Victim was lying on the left side of the couch, and Appellant was watching television while sitting between the two children. Victim rested her head on the arm of the couch and attempted to fall asleep. Thereafter, the assault occurred.

As she lay on the couch, Victim felt Appellant move aside her shorts and underwear. Victim then felt Appellant penetrate her external genitals with his finger and then his tongue. Victim immediately recognized the inappropriateness of Appellant's conduct. Appellant stopped molesting Victim when he saw her opening her eyes; however, Victim still could observe Appellant had touched her. Victim then returned to her bedroom. Appellant entered Victim's bedroom with a glass of water and said goodnight to her before leaving. Victim cried before falling asleep.

The next day, June 4, 2020, Victim tearfully disclosed the abuse to Ms. Bunty. Ms. Bunty left the residence with all the children and contacted Children & Youth Services. Before leaving the residence,[1] Ms. Bunty collected the underwear that Victim was wearing at the time of the assault and placed the underwear in a dresser drawer at the residence.

---

[1] After Ms. Bunty and the children left the residence on June 4, 2020, Appellant repeatedly sent text messages to Ms. Bunty. In the text messages, Appellant indicated that he had received notification of a Children & Youth Services investigation and denied that he would do anything to harm Ms. Bunty or the children.

Ms. Bunty subsequently provided the underwear to Eastern Adams Regional Police.[2] Approximately 20 hours after the assault, Victim underwent a sexual assault examination at WellSpan Gettysburg Hospital, and her external genitals were swabbed. The Eastern Adams Regional Police submitted both the underwear and the external genital swabs to the Pennsylvania State Police Harrisburg Regional Laboratory.

Subsequent analysis indicated Appellant's responsibility for the sexual assault. A serological analysis by forensic scientist Deborah Zamboni detected the presence of body fluids on the underwear; Ms. Zamboni cut out two pieces of the underwear for further analysis. Ms. Allison Miller, a forensic DNA scientist who works in the Pennsylvania State Police Forensic Unit Division, analyzed both the underwear cuttings and an external genital swab. Ms. Miller's analysis of these items indicated Appellant as a likely contributor of the Y chromosome DNA found thereupon.[3]

---

[2] At trial, there was conflicting testimony regarding the time that Ms. Bunty retrieved the underwear. Ms. Bunty testified she returned to the residence on June 5, 2020, retrieved the underwear, and took them to the police. However, other evidence, including testimony from Detective Darryl Keller, the affiant in this matter, indicated the Eastern Adams Regional Police Department received the underwear on June 4, 2020.

[3] Ms. Miller's analysis revealed a complete match between the non-sperm fraction of the Y chromosome DNA profile from the front of the underwear's crotch panel and the Y chromosome DNA profile of a known reference sample taken from Appellant. Here, there was a match between all 25 loci of the Y chromosome DNA profiles from (1) this underwear cutting and (2) Appellant's reference sample. Appellant and his paternally related male relatives could not be excluded as contributors of the Y chromosome DNA profile from the front crotch panel cutting, which could be expected to be found in only one of every 9,742 males.

Ms. Miller's analysis also revealed a partial match between the non-sperm fraction of the Y chromosome DNA profile from the back of the underwear's crotch panel and the Y chromosome DNA profile of Appellant's reference sample. Here, there was a match between 19 loci of the Y chromosome DNA profiles from (1) this underwear cutting and (2) Appellant's reference sample. Again, Appellant and his paternally related male relatives could not be excluded as contributors of the Y chromosome DNA profile on the back of the crotch panel.

Finally, Ms. Miller's analysis revealed a partial match between the non-sperm fraction of the Y chromosome DNA profile from an external genital swab and the Y chromosome DNA profile of Appellant's reference sample. There was a match between 24 loci of the Y chromosome DNA profiles from (1) the swab and (2) Appellant's reference sample. Here, too, Appellant and his paternally related male relatives could not be excluded as contributors of the Y chromosome DNA profile on the swab, which could be expected to be found in only one of every 9,742 males.

Appellant was charged with involuntary deviate sexual intercourse,[4] unlawful contact with a minor,[5] aggravated indecent assault,[6] indecent assault,[7] and corruption of minors,[8] and the parties proceeded to jury trial before this Court on August 2, 2021. Appellant testified that he lay down on the couch to fall asleep and, in doing so, placed the top of his head between Victim's legs, which he claimed were already spread, so that his head rested on Victim's inner thigh. Appellant also admitted that he shifted Victim on the couch by pushing her "crotch area" and that he kissed the inner area of Victim's upper thigh as "a sign of affection" that "was nothing sexual." Appellant also elicited testimony from Ms. Miller on cross-examination that it was hypothetically possible for DNA to transfer among dirty clothes in a laundry basket and for an individual folding laundry to leave his or her DNA on the items.

At the conclusion of trial, the jury found Appellant guilty of all charges. On October 26, 2021, this Court sentenced Appellant to an aggregate term of 15 to 30 years' imprisonment in a state correctional institution with a consecutive term of three years' probation for the unlawful contact conviction. Appellant filed a Motion for Post-Sentence Relief on November 10, 2021, which this Court denied on March 3, 2022.[9] Appellant

---

At trial, the parties stipulated that Appellant's biological son, who lived at the residence, did not have direct contact with Victim's genitals and did not come into contact with Victim's underwear while in Victim's presence. This stipulation tended to establish that Appellant contributed the Y chromosome DNA found on the aforementioned items.

[4] 18 Pa.C.S. § 3123(b).

[5] 18 Pa.C.S. § 6318.

[6] 18 Pa.C.S. § 3125(a)(7).

[7] 18 Pa.C.S. § 3126(a)(7).

[8] 18 Pa.C.S. § 6301(a)(1)(ii).

[9] Appellant retained present counsel following trial counsel's filing of his Motion for Post-Sentence Relief. Present counsel repeatedly moved for and received extensions to review the record and file an Amended Post-Sentence Motion but ultimately declined to file the same. This Court then denied Appellant's Motion for Post-Sentence Relief.

timely filed his Notice of Appeal on March 24, 2022. On March 31, 2022, Appellant filed a Statement of Matters Complained of on Appeal, which raises the following claims:

1. The Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that [Appellant] was in "contact"—an act of communication—with a minor for the purpose of engaging in any prohibited activity.

2. If "contact" for purposes of the crime of unlawful contact with minor encompasses a physical touching, the trial court in this case imposed an illegal sentence by failing to merge the consecutive probationary sentence for unlawful contact with the sentence of imprisonment for aggravated indecent assault.

3. The verdict of guilty on all counts was against the weight of the evidence considering: [Appellant]'s testimony, the text message from [Appellant] denying harming any child, the contradictory evidence concerning [Victim]'s underwear, the testimony that [Appellant] handled the laundry for the household, the lack of evidence concerning what type of cell the male DNA profile came from, and the testimony that DNA can transfer through laundry and folding laundry.

## LEGAL STANDARD

The standard of review on a sufficiency of evidence claim is "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." **Commonwealth v. Jones**, 904 A.2d 24, 26 (Pa. Super. 2006) (**quoting Commonwealth v. Stevenson**, 894 A.2d 759, 773 (Pa. Super. 2006) (overruled on other grounds)). "[T]he facts and circumstances established

5

by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Hartzell**, 988 A.2d 141, 143 (Pa. Super. 2009) (quoting **Commonwealth v. McClendon**, 874 A.2d 1223, 1228–29 (Pa. Super. 2005)). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Bowen**, 55 A.3d 1254, 1260 (Pa. Super. 2012) (quoting **Commonwealth v. Muniz**, 5 A.3d 345, 348 (Pa. Super. 2010)). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Hartzell**, 988 A.2d at 143. A reviewing court "may not weigh the evidence and substitute [its] judgment for [that of] the fact-finder." **Id.**

"A challenge to the legality of [a] sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction." **Commonwealth v. Robinson**, 931 A.2d 15, 19–20 (Pa. Super. 2007). "[T]he term 'illegal sentence' is a term of art that our Courts apply narrowly, to a relatively small class of cases." **Id.** at 21 (quoting **Commonwealth v. Berry**, 877 A.2d 479, 483 (Pa. Super. 2005)). However, a claim of error regarding merger of sentences "implicate[s] the fundamental legal authority of the court to impose the sentence that it did." **Id.**

"[A] weight of the evidence challenge contests the weight that is accorded the testimonial evidence," **Commonwealth v. Morgan**, 913 A.2d 906, 909 (Pa. Super. 2006), and "is addressed to the discretion of the trial court," **Commonwealth v. Widmer**, 744 A.2d 745, 752 (Pa. 2000). Thus, a trial court that rules on a weight of the evidence claim

need not "view the evidence in the light most favorable to the verdict winner." **Id.** at 751.

However, when a defendant contests the weight of the evidence,

> [a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Id.** (internal citations and quotation marks omitted). Accordingly, "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Commonwealth v. Brown**, 648 A.2d 1177, 1189 (Pa. 1994) (emphasis removed) (quoting **Thompson v. City of Philadelphia**, 493 A.2d 669, 672 (Pa. 1985)). "[A] trial court's denial of a motion for new trial because the verdict is not opposed to the weight of the evidence is 'one of the least assailable' of its rulings" and is only subject to appellate review for abuse of discretion. **Id.** at 1190.

## DISCUSSION

First, Appellant argues that there was insufficient evidence to support his conviction for unlawful contact with a minor. This Court agrees.

"A person commits an offense if he is intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under [Chapter 31 of the Crimes Code (relating to sexual offenses)], and either the person initiating the contact or the person being contacted is within this Commonwealth." 18 Pa.C.S. § 6318(a)(1). "Contact," for the purposes of this offense, is defined as "[d]irect or indirect contact or communication by

7

any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system." 18 Pa.C.S. § 6318(c). Section 6318 "is best understood as [prohibiting] 'unlawful communication with a minor'" and is violated when an individual "communicat[es] with a minor for enumerated sexual purposes." **Commonwealth v. Rose**, 960 A.2d 149, 152–53 (Pa. Super. 2008).

Unlawful contact with a minor includes in-person communication before or during a sexual assault. In **Commonwealth v. Velez**, 51 A.3d 260 (Pa. Super. 2012), the Superior Court of Pennsylvania upheld the unlawful contact conviction of a defendant who was caught performing oral sex on a minor victim. 51 A.3d at 262. At the time of the assault, the victim was "unclothe[d] below the waist," and her knees were pointing upward while the defendant's head was between her legs. **Id.** at 262, 267. The Superior Court found that sufficient evidence supported the defendant's unlawful contact conviction, reasoning that the defendant must have engaged in "previous [verbal or nonverbal] contact" that caused the victim "to unclothe below the waist and to assume that pose." **Id.** at 267. Statements made by a defendant during a sexual assault of a minor also can constitute unlawful contact, as can communicative measures taken by a defendant to prevent the minor from resisting the assault. See **Commonwealth v. Davis**, 225 A.3d 582, 588 (Pa. Super. 2019) ("Appellant's descriptions to [the minor victim] of what he was about to do with his private area and why he was manipulating the victim's private area were directly related to his engaging in sexual contact with her, and these discussions

8

demonstrate the kind of communication contemplated by [18 Pa.C.S. § 6318].");
**Commonwealth v. Flores-Medina**, No. 1091 MDA 2016, 2017 WL 1163057, at *1 (Pa. Super. Mar. 28, 2017) (upholding the defendant's unlawful contact conviction when the defendant covered the minor victim's mouth while forcibly raping her).

By contrast, a defendant who approaches and sexually assaults a minor may not, without more, be guilty of unlawful contact. In **Commonwealth v. Leatherby**, 116 A.3d 73 (Pa. Super. 2015), the Superior Court found that insufficient evidence supported the defendant's unlawful contact conviction when the defendant only "enter[ed the minor victim's] room at night, while she was sleeping, and grope[d] her chest and buttocks." 116 A.3d at 80. The court reasoned that because "[the defendant] would not say anything, or communicate with [the victim] to assume any certain position, or to submit to any given act," no inference arose "that [the defendant] engaged in the kind of communication, either verbal or physical, contemplated in **Velez**." 116 A.3d at 80. Similarly, in **Commonwealth v. Letham**, No. 1259 WDA 2020, 2022 WL 122460 (Pa. Super. Jan. 13, 2022), the Superior Court found that insufficient evidence supported the defendant's unlawful contact conviction when the defendant simply "approached the [minor] victim and immediately grabbed her breasts" while the victim was standing with her back against a wall. **Letham**, 2022 WL 122460, at *3–4. The court reversed the defendant's conviction because "[t]he indecent assault[,] alone, d[id] not constitute . . . unlawful contact," and "[t]here were no movements, words, or actions by [the defendant] or [the victim] that indicated [the defendant] unlawfully contacted [the victim] to facilitate the indecent assault." **Id.** at *4.

9

Appellant's unlawful contact conviction cannot stand because there is no evidence that Appellant communicated with Victim for purposes of sexually assaulting her. To the contrary, the evidence indicates Appellant sought to molest Victim without her knowledge because Appellant stopped performing oral sex on her when he saw her open her eyes. Appellant's actions, although criminal, clearly were not facilitated by any communication with Victim. Thus, the instant matter is much more like **Leatherby** and **Letham** than **Velez** because Appellant did not indicate to Victim that she should submit to sexual contact. As Appellant suggests, the instant matter is especially similar to **Leatherby**; both matters involved sexual assaults perpetrated against victims who were either asleep or apparently asleep, with no communication of any sort between the perpetrator and the minor victim. Thus, this Court respectfully requests that Appellant's unlawful contact conviction be vacated and the matter remanded for resentencing.

In his next claim, Appellant argues that this Court should have merged his probationary sentence for unlawful contact with his sentence of imprisonment for aggravated indecent assault. It is unnecessary for this Court to address the merits of Appellant's argument because, as discussed above, Appellant's unlawful contact sentence should be vacated.[10]

---

[10] Nevertheless, the Court notes that convictions for aggravated indecent assault and unlawful contact with a minor do not merge for sentencing purposes. "No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765. Merger is improper "unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009). A court's merger "analysis begins and ends with the statutory elements of each offense." **Commonwealth v. Edwards**, 256 A.3d 1130, 1137 (Pa. 2021). Thus, convictions for aggravated indecent assault and for unlawful contact do not merge for sentencing purposes because these offenses have different elements. **Commonwealth v. Dattilo**, No. 1195 EDA 2014, 2015 WL 7260541, at *4 (Pa. Super. May 11, 2015) ("[U]nlawful contact requires a communication that aggravated indecent assault with a minor does not, while aggravated indecent assault with a minor requires an actual physical penetration of the

10

In his final claim, Appellant contends the verdict was against the weight of the evidence. Appellant asserts that the following factors support his argument: (1) his testimony, (2) his denial via text message of harming any child, (3) contradictions in trial testimony regarding Victim's underwear, (4) testimony that Appellant did laundry for the household, (5) lack of evidence concerning the type of cell from which the male DNA profile was obtained, and (6) testimony that DNA can be transferred to clothing during the laundering and folding process. However, Appellant's claim of error is unavailing because the evidence in this matter strongly supported the jury's verdict, which Appellant has not shown "[to be] so contrary to the evidence as to shock one's sense of justice." **Brown**, 648 A.2d at 1189.

To begin, Appellant's own protestations of innocence do not render the jury's verdict again the weight of the evidence. Here, the jury received conflicting testimony from Appellant and Commonwealth witnesses, including Victim and Ms. Bunty. It was for the jury to judge the credibility of the witnesses and to resolve any conflicts in their testimony, **Commonwealth v. Bishop**, 266 A.3d 56, 68 (Pa. Super. 2021), and the jury chose to believe the Commonwealth's witnesses instead of Appellant. The jury's resolution of the matter does not shock this Court's sense of justice, **Brown**, 648 A.2d at 1189, particularly in view of Appellant's own testimony. The acts Appellant admitted to performing deviate from ordinary conduct consistent with familial affection: Appellant claimed he placed his head between Victim's legs and kissed the upper interior of her thigh. By contrast, Victim offered straightforward and believable testimony that Appellant shifted aside her clothing and penetrated her external genitals with his finger and tongue. Furthermore, both Victim

genitals or anus which unlawful contact does not. The crimes do not merge and separate sentences were proper.").

11

and Ms. Bunty described Victim's strong emotional reaction to the assault, which Victim reported within a day. Even without the DNA evidence that further indicated Appellant's guilt, the jury could believe Victim over Appellant and did not err in its weighing of the evidence.[11] See **Commonwealth v. Charlton**, 902 A.2d 554, 561–62 (Pa. Super. 2006).

Likewise, the presentation of conflicting testimony regarding Victim's underwear does not entail that Appellant's convictions were against the weight of the evidence. At trial, Ms. Bunty testified that she retrieved Victim's underwear from the residence on June 5, 2020; however, Detective Darryl Keller of the Eastern Adams Regional Police Department testified that police received Victim's clothes on June 4, 2020. Trial counsel explicitly drew the jury's attention to this discrepancy; however, it was within the province of the jury to believe that Appellant was guilty of the charged offenses regardless of any inconsistent testimony. **Commonwealth v. Lilliock**, 740 A.2d 237, 242 (Pa. Super. 1999) ("[W]here evidence is conflicting, the issue of credibility of witnesses and a resolution of the conflict is a matter solely of the trier of fact."). Even discounting the DNA evidence recovered from the underwear, the fact remains that DNA consistent with Appellant's profile was found on Victim's external genitals, which strongly corroborates Victim's account of the assault.[12] Furthermore, as established above, the jury would have been

---

[11] Similarly, the jury did not improperly disregard Appellant's self-serving denial, via text message, of harming any child. It would have been preposterous for the jury to have disregarded Victim's graphic account of her ordeal simply because Appellant denied any wrongdoing in an unsworn statement delivered via text message after the assault. Caselaw is rife with examples of sexual assault perpetrators who deny wrongdoing. See generally, e.g., **Commonwealth v. Stahl**, 175 A.3d 301 (Pa. Super. 2017); **Commonwealth v. Sandusky**, 77 A.3d 663 (Pa. Super. 2013); **Commonwealth v. Widmer**, 744 A.2d 745 (Pa. 2000).

[12] For a similar reason, Appellant fails in his attempt to dispute the jury's weighing of the evidence by insinuating that his DNA could have been transferred to the underwear while he was doing the household's laundry. The hypothetical possibility that Appellant's DNA could transfer to Victim's underwear during the laundering process does not address the fact that DNA consistent with Appellant's profile also was present on Victim's external genitals. In addition, Appellant's argument does not account for Victim's persuasive and detailed testimony that Appellant sexually assaulted her.

12

justified in returning a guilty verdict even without DNA evidence. Thus, any conflict in testimony regarding Victim's underwear does not undermine the jury's weighing of the evidence. For all the foregoing reasons, Appellant is not entitled to relief on his third claim.

Therefore, this Court respectfully requests that Appellant's convictions, other than his conviction for unlawful contact with a minor, be affirmed. This Court also requests that Appellant's unlawful contact conviction be reversed and the case remanded for resentencing.

BY THE COURT:

Dated: May 5, 2022

**SHAWN C. WAGNER**
**Judge**

---

Furthermore, the fact that the Commonwealth did not establish the type of cell from which the DNA profile was obtained does not mean that the jury improperly weighed the evidence before it. The mere fact that DNA consistent with Appellant's profile was recovered from Victim's underwear and external genitals is highly corroborative of Victim's credible testimony that appellant shifted her underwear and digitally and orally penetrated her external genitals.

13