J-S02033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE A. RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 1022 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 7, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001973-2021

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:          **FILED: MAY 1, 2023**

Appellant, Jose A. Rodriguez, appeals from the July 7, 2022 judgment of sentence following his jury conviction of Unlawful Contact with a Minor, Indecent Assault with Threat of Forcible Compulsion, Indecent Assault of a Person Less Than 16 Years of Age, and Corruption of Minors.[1]  Appellant challenges the sufficiency of the evidence and the legality of his sentence. Upon review, we affirm Appellant's convictions but vacate Appellant's judgment of sentence and remand for resentencing.

It its Pa.R.A.P. 1925(a) Opinion, the trial court set forth an accurate and detailed recitation of the factual and procedural history, as well as a summary of testimony, which we adopt for purposes of this appeal.  ***See*** Trial Ct. Op., 8/24/22, at 1-7.  In sum, Appellant and Francheska Rodriguez are cousins

_____

[1] 18 Pa.C.S. §§ 6318(a)(1), 3126(a)(3), 3126(a)(8), and 6301(a)(1)(ii), respectively.

who reunited at a family funeral in the summer of 2020 where then-twenty-eight-year-old Appellant met Ms. Rodriguez's daughter, then-fifteen-year-old A.A. ("Victim"), for the first time. Ms. Rodriguez invited Appellant to her home to visit in October 2020, and again for Thanksgiving. On the day before Thanksgiving, Appellant arrived with his girlfriend Dana Colon ("Girlfriend"), her children, and a friend.

On November 24, 2020, Thanksgiving Day, Victim had a friend over to the house. After dinner, Victim asked to leave with her friend and Ms. Rodriguez said no because it was too late. Victim became upset, and cried and yelled as she stomped up the stairs to her bedroom. A few minutes later, Appellant walked into Victim's bedroom, shut the door, and sat on the bed next to Victim. Appellant told Victim that she should be thankful for her mother. Appellant explained that he did not have a mother growing up and that his childhood was very hard.

The conversation soon shifted, and Appellant told Victim that her clothes were inappropriate, or provocative, for her age. Appellant explained "the things he has to do for a living" and told Victim that "sometimes I have to kill people and do stuff that I don't want to do." N.T. Trial, 4/6/22-4/8/22, at 51. Appellant then told Victim that he does not care about life, because he has nothing to lose. Appellant was shocked by the things Appellant was saying and did not respond.

Appellant and Victim were both crying, and Appellant hugged Victim. Appellant then began kissing Victim on the neck, and Victim did not move.

- 2 -

Appellant started to rub his hand along Victim's body from the top of her hip down the outside of her thigh on top of her clothing. Appellant proceeded to kiss Victim on the lips. Victim did not scream or make noise because she thought: "maybe if I stay quiet enough, nothing will happen because if I scream I could just – I don't know, something can happen to me. Like he doesn't have nothing to lose. He can just kill me, kill my mom. I don't know. I stayed quiet. I was just in shock because I didn't believe it." *Id.* at 55.

Appellant stopped kissing Victim when Ms. Rodriguez called Victim on her cell phone to request that she come downstairs. A few minutes later, Victim's brother knocked on the door, which was locked, and the interruption prompted Appellant to leave the bedroom.

Victim went into the bathroom to call her friend and tell her what just happened. Victim's friend convinced her to tell Ms. Rodriguez about the incident. Ms. Rodriguez confronted Appellant, who denied any wrongdoing and left.

Around 10:45 PM, Victim called the police and Police Officer Jeremy Sborz responded to the scene. On December 8, 2020, the Children's Resource Center conducted a forensic interview of Victim. On January 5, 2021, the Commonwealth charged Appellant with the above-listed crimes.

On April 6, 2022, a jury trial commenced. The Commonwealth presented testimony from Victim, Ms. Rodriguez, Officer Sborz, and Detective Nina Maus, each of whom testified in accordance with the above recitation of facts. Appellant presented testimony from Ms. Colon, who testified that

approximately fifteen to twenty minutes after Appellant went to Victim's bedroom, she also went into the bedroom for a few minutes. Ms. Colon explained that, at the time, the door was unlocked, and that Appellant and Victim were not sitting near each other.

At the conclusion of the trial, the jury convicted Appellant of Unlawful Contact, two counts of Indecent Assault, and Corruption of Minors. On July 7, 2022, the trial court sentenced Appellant to an aggregate term of three to five years' incarceration.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether there was insufficient evidence to sustain the conviction for Unlawful Contact with a Minor when the contact in a question occurred after a verbal communication, and the predicate verbal communication had no expressive element to show the required purpose for contact under the Unlawful Contact statute.

2. Whether there was insufficient evidence to support the conviction for Indecent Assault by Threat of Forcible Compulsion when the verbal communication was not related to any threat and the objective circumstances prior to and after the contact show no directed threat.

3. Whether the trial court erred in sentencing Appellant consistent with a felony Corruption of Minors Statute, when the jury did not find a course of conduct.

Appellant's Br. at 6 (numbered and reordered for ease of disposition, some capitalization changed).

In his first two issues, Appellant raises challenges to the sufficiency of the evidence for his Unlawful Contact and Indecent Assault convictions. *Id.* at 6.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). "Our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa. Super. 2019). When reviewing sufficiency challenges, we evaluate the record in the light most favorable to the verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014). This Court will not disturb a verdict when "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Orr***, 38 A.3d 868, 872 (Pa. Super. 2011) (*en banc*) (citation omitted). "[T]he fact finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Mobley***, 14 A.3d 887, 889-90 (Pa. Super. 2011) (citation omitted). In reviewing a sufficiency challenge, we do not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Id.* at 890.

Challenges to witness credibility pertain to the weight, not sufficiency, of the evidence. ***Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014). Moreover, inconsistencies are for the fact-finder "to resolve and do not dictate a finding the evidence was not sufficient for conviction." ***Commonwealth v. Juray***, 275 A.3d 1037, 1046 (Pa. Super. 2022). Our

- 5 -

sufficiency analysis must therefore accept the credibility and reliability of all evidence that supports the verdict. ***Commonwealth v. Breakiron***, 571 A.2d 1035, 1042 (Pa. 1990).

Finally, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018).

In his first issue, Appellant avers that the evidence was insufficient to convict him of Unlawful Contact with a Minor. Appellant's Br. at 13. He argues that the Commonwealth had the burden of proving that he communicated with Victim for the purpose of initiating sexual contact, but that the evidence demonstrated only that Appellant engaged in a conversation for a non-sexual purpose, *i.e.*, to tell Victim that she should be thankful for her mother and wear more conservative clothing. He argues that this evidence proves that he did not communicate with Victim during the assault. ***Id.*** at 11, 15. Appellant's argument has no merit.

A person is guilty of Unlawful Contact with a Minor if he or she is intentionally in contact with a minor for the purpose of engaging in a prohibited Chapter 31 sexual offense. 18 Pa.C.S. § 6318(a)(1). "Contact" is defined, in relevant part, as "[d]irect or indirect contact or communication by any means, method or device, including contact or communication in person[.]" 18 Pa.C.S. § 6318(c). "[T]he crime of Unlawful Contact with a Minor focuses on communication, **verbal or non-verbal**, and does not

depend upon the timing of the communication." ***Commonwealth v. Davis***, 225 A.3d 582, 587 (Pa. Super. 2019). "Thus, it matters not whether the communication occurred at the outset of or contemporaneously with the [actual sexual] contact; once the communicative message is relayed to a minor, the crime of unlawful contact is complete." ***Id.*** As this Court has explained, the statute is "best understood as unlawful **communication** with a minor [because b]y its plain terms, the statute prohibits the act of communicating with a minor for enumerated sexual purposes." ***Commonwealth v. Rose***, 960 A.2d 149, 152-53 (Pa. Super. 2008).

Notably, "Section 6318 does not require that a defendant even be charged with, let alone convicted of, any underlying substantive offense for which he contacted the minor." ***Commonwealth v. Aikens***, 168 A.3d 137, 141 (Pa. 2017). Moreover, "a defendant need not be successful in completing the purpose of his communication with a minor in order to be convicted of unlawful contact with a minor." ***Id.***

Appellant attempts to classify his verbal communication with Victim as a discrete, non-sexual conversation that was not connected in time or context to his actions of hugging, kissing, and touching a fifteen-year-old in a sexual manner. The record belies Appellant's claims. Victim testified that Appellant entered her bedroom, closed the door, sat next to victim on her bed, talked to Victim about her provocative clothing, and soon thereafter hugged and kissed Victim on her neck and mouth and rubbed her leg. N.T. Trial at 46-56. Given the totality of the evidence, it was reasonable for the jury to infer that

Appellant's verbal communication regarding Victim's clothing, coupled with Appellant's non-verbal communication of closing the door, sitting next to Victim on the bed, and hugging Victim, constituted communication with Victim for the purpose of engaging in sexual activity. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth presented sufficient evidence to convict Appellant of Unlawful Contact with a Minor.

Appellant cites *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa. Super. 2015), to support his argument that his conversation with Victim did not constitute contact for the purpose of indecent assault; rather, it represented "contact incident to the assault." Appellant's Br. at 17. In *Leatherby*, this Court vacated the appellant's conviction for Unlawful Contact with a Minor where the victim testified that the appellant would repeatedly come into her bedroom at night while she was sleeping and grope her breast and buttocks without talking to her. 116 A.3d at 79-80. Here, Appellant talked to Victim, and Victim was awake. *Leatherby* is, thus, easily distinguished from the instant case and, therefore, unpersuasive.

Appellant next challenges his conviction for Indecent Assault by Forcible Compulsion. Appellant's Br. at 20. Appellant argues that Appellant's statements about killing people did not constitute the requisite threat of forcible compulsion because they were made in the course of a conversation about Appellant's childhood difficulties and were not directed towards Victim. *Id.* at 20-21, 26.

To prove Indecent Assault by Threat of Forcible Compulsion, the Commonwealth must prove that a defendant had "indecent contact with the complainant" and "does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa.C.S. § 3126(a)(3). "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." *Id.* at § 3101. "Forcible Compulsion" is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." *Id.*

Our Supreme Court has explained that whether a threat of forcible compulsion occurred is a determination based upon the totality of the circumstances, including but not limited to:

> [T]he respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

*Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986).

The evidence presented at trial demonstrated that Victim was fifteen years old as opposed to Appellant's age of twenty-eight, Victim was upset, Appellant followed Victim into her bedroom and sat next to her on her bed, Appellant commented on Victim's provocative clothing, Appellant informed Victim that he had previously killed people, Appellant hugged Victim, and Appellant began to kiss Victim's neck and mouth while she did not move or

respond. While Appellant characterizes his comments about killing people as a conversation about his childhood, Victim testified that the comments scared and shocked her, and that she perceived the comments as a threat that Appellant would kill her and her mother if she did not comply with Appellant. *See* N.T. at 55. Considering the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth, it was reasonable for the jury to conclude that Appellant's comments rose to the level of a threat of forcible compulsion. Accordingly, Appellant's sufficiency challenge fails.

In his final issue, Appellant avers that his sentence for Corruption of Minors is illegal and challenges the grading of the offense. Appellant's Br. at 8. In its opinion, the trial court acknowledges that the court incorrectly sentenced Appellant to a felony of the third degree, which requires a remand to correct the grading of the offense to a misdemeanor of the first degree. Trial Ct. Op. at 12. Upon review, we agree that remand is appropriate because the jury did not find that Appellant engaged in a "course of conduct" which is required to grade the offense as a felony of the third degree. *See* 18 Pa.C.S. § 6301(a)(1)(ii). Accordingly, we vacate Appellant's judgment of sentence and remand for resentencing.

In conclusion, the Commonwealth presented sufficient evidence to convict Appellant of Unlawful Contact with a Minor and Indecent Assault by Threat of Forcible Compulsion and we, thus, affirm those convictions. Upon review, the trial court erred when it sentenced Appellant on the Corruption of Minors offense as a felony of the third degree when the correct grading is a

misdemeanor of the first degree. We, therefore, vacate Appellant's judgment of sentence and remand for resentencing.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/01/2023