J-A28038-19

2019 PA Super 365

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ERIC J. DAVIS :
:
Appellant : No. 660 EDA 2018

Appeal from the Judgment of Sentence January 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006801-2014

BEFORE:   PANELLA, P.J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:               **FILED DECEMBER 23, 2019**

Appellant Eric J. Davis appeals from the Judgment of Sentence Entered

in the Court of Common Pleas of Philadelphia County on January 29, 2018,

following his convictions of Rape of a Child and related offenses.  We affirm.

The trial court set forth the relevant facts revealed during the jury trial

herein as follows:

[Appellant] was found guilty of Rape of a Child, Involuntary
Deviate Sexual Intercourse with a Child, Aggravated Indecent
Assault of a Child, and Unlawful Contact with a Minor, following
a jury trial on July 25, 2017.[1] These charges stemmed from a
May 21, 2014 phone call to the police which reported the sexual
assault of the complainant, [N.W.], [1] age 12, by her cousin,
[A]ppellant. When officers arrived, the complainant stated to the
police that [Appellant] had digitally penetrated her vagina earlier
that same day. At trial, the complainant testified that [A]ppellant
had been touching her inappropriately since August 2013.  Notes

———————————————————

[*] Former Justice specially assigned to the Superior Court.
[1] To protect the identity of the victim, we have replaced her name and the
proper names of her relatives with initials.

of Testimony ("N.T."), 07/19/2017, at 16, 29-31, 36, 38. Appellant was tried by a jury and convicted for the above offenses and was sentenced on January 29, 2018 to an aggregate term of 15 to 40 years of state confinement and 10 years reporting probation with Megan's Law Lifetime Registration. *Sentencing Order, 01/29/18*. This timely appeal followed.

\*\*\*

## Evidence

At trial, the [C]ommonwealth's case-in-chief consisted of the testimony of nine (9) witnesses: Complainant, [N.W], [J.D. IV], ([N.W.'s] step father), [A.W.] ([N.W.'s] great aunt), [M.W.] ([N.W.'s] brother), Police Officer Ramon Rosado, Detective Erin Hinnov (Special Victim's Unit-Child Abuse Unit), Detective Michael Swan, Dr. Maria McColgan and Michele Kline (Forensics Interview Specialist, Children's Alliance). The errors claimed by [A]ppellant deal specifically with the testimony of the complainant and of Dr. Maria McColgan, who was called by the Commonwealth as an expert witness in the field of physical and sexual abuse of children, whose testimony included hearsay statements of the complainant contained within her medical records.

## Complainant's Trial Testimony

The complainant testified as follows. Complainant was born on November 29, 2001 and was sixteen (16) years [old] at the time of trial. She testified that she spent time at her aunt's house at 2527 North 19th St. while her mother was at work. N.T., 07/20/17, at 17-18. The Appellant, who was the complainant's older cousin, also resided at this location with the complainant's aunt. *Id*. The complaint [sic] testified that the Appellant began inappropriately touching her in August of 2013. *Id*. at 16. She testified that on one occasion, the Appellant placed her on top of him "and started like rocking [her] back and forth. . . ." *Id*. at 23. Several times, the Appellant digitally raped her. *Id*. at 27-28. When the victim was 11 years old, [Appellant] licked and rubbed his penis on the complainant's vagina. *Id*. at 28-29. The complainant testified that, during one such encounter, the Appellant, referring to his penis, told her, "I'm just going to rub it on top." *Id*. at 30.

After these reoccurring incidents, the complainant asked the Appellant why he was doing this to her. *Id*. at 32. In response to

- 2 -

the complainant's question, the Appellant said he and the complainant were going to get married and have kids. *Id*. at 32. Another time, [Appellant] "took out his penis" and attempted to force the victim to touch it. *Id*. at 30.

On May 21, 2014, the complainant called the police after the Appellant again inserted his fingers into her vagina. *Id*. at 35-37.

_____
[1] 18 Pa.C.S.A. § 3121 §§ C, § 3123 §§ B, § 3125 §§ B, and § 6318 §§Al, respectively.

Trial Court Opinion, filed 1/10/19, at 1-2, 3-4.

On January 29, 2018, Appellant was sentenced to an aggregate prison term of fifteen (15) years to forty (40) years to be followed by ten (10) years of reporting probation. Appellant filed a post-sentence motion on February 11, 2018, and the trial court denied the same on February 13, 2018.

Appellant filed a timely appeal on March 1, 2018. On March 5, 2018, the trial court directed him to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and, after receiving his requested extension of time in which to do so, Appellant filed his concise statement on May 30, 2018. Therein, Appellant set forth five points of error, and he presents two of those claims in the Statement of the Questions Involved portion of his appellate brief:

> A. Was not the evidence insufficient for conviction of unlawful contact with a minor, insofar as [Appellant] was not in contact with the complainant for any prohibited purpose?
>
> B. Did not the trial court err in denying [A]ppellant's motion for a mistrial and for withdrawal of [A]ppellant's trial counsel due to a newly discovered conflict of interest and actual prejudice to [Appellant]?

Brief for Appellant at 3.

Our standard and scope of review of challenges to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004).

A person is guilty of Unlawful Contact with a Minor if he or she "is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within

- 4 -

this Commonwealth: (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses)." 18 Pa. C.S.A. § 6318(a)(1).[2]

For the crime of unlawful contact with a minor, "contacts" is defined as:

"Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa. C.S.A. § 6318(c).

While Appellant does not dispute that N.W.'s testimony established he had engaged in sexual contact with her, he claims the evidence did not show he unlawfully contacted her for the purpose of initiating those acts. Brief for Appellant at 9. Appellant reasons that as cousins, he and N.W. communicated on a regular basis, but the evidence did not show that he did such things like call her over to him for the purpose of engaging in illegal sexual contact. *Id*. at 9, 12. He stresses that "the crime of unlawful contact does not criminalize all contact between a complainant and a perpetrator, but only the contact or communications designed for the specific purpose of engaging in illegal conduct." *Id*. at 12. Appellant concludes that:

There is no evidence that [A]ppellant so much as called the complainant over to him in order to touch him inappropriately. Instead, the complainant's descriptions of the sexual conduct describes a series of incidents in which she was touched when they

---

[2] The enumerated offenses include, *inter alia*, Rape, Involuntary Deviate Sexual Intercourse, and Aggravated Indecent Assault, **see** 18 Pa.C.S.A. §§ 3121(c), 3123(b), and 3125(b), crimes of which Appellant was convicted.

already happened to be in close proximity to one another: They were together watching television or sitting next to each other while she did her homework. These are crimes of opportunity, not examples of appellant communicating with the complainant in order to be able to touch her sexually. . . . [T]he act of placing the complainant on top of him was part of the sexual contact itself, and not a communication engaged in for the purpose of engaging in that sexual contact. . . . Appellant's act of moving her into position part of the sexual assault itself rather than a communication designed to facilitate it. There is simply no evidence of unlawful contact in this case, and [A]ppellant's conviction must be discharged.

*Id*. at 12-13.

Appellant's argument is disingenuous, for it fails to recognize that the crime of Unlawful Contact with a Minor focuses on communication, *verbal or non-verbal*, and does not depend upon the timing of the communication. Thus, it matters not whether the communication occurred at the outset of or contemporaneously with the contact; once the communicative message is relayed to a minor, the crime of unlawful contact is complete. **See Commonwealth v. Rose**, 960 A.2d 149, 152-53 (Pa.Super. 2008), *appeal denied*, 980 A.2d 110 (2009). Thus, the statute is best understood as "unlawful **communication** with a minor," for by its plain terms, it prohibits communication with a minor for the purpose of carrying out certain sex acts. *Id*.

When considering this claim, the trial court reasoned as follows:

In **Commonwealth v. Leatherby**, our Superior Court found there was sufficient evidence that the defendant engaged in "the kind of communication contemplated by the statute," because he had verbally and physically communicated with the complainant "for the purposes of sexual contact."

- 6 -

> ***Commonwealth v, Leatherby***, 116 A.3d 73, 80 (Pa.Super. 2015). There, the complainant testified that the defendant was in the bathroom and "told [her] to come here." The defendant then "told [her] to give him a hug" and began rubbing her private areas, trying to pull up her skirt, and asked her if it felt good. *Id*.
>
> Similar to ***Leatherby***, the evidence here is sufficient to warrant a conviction for Unlawful Contact with a Minor because the Appellant verbally and physically communicated with the complainant by placing her on top of him and communicating with her for the purpose of engaging in sexual contact. ***See Leatherby***, 116 A.3d at 80. The [C]omplainant testified that on one occasion, the Appellant placed her on top of him "and started like rocking [her] back and forth...." N.T., 07/20/17, at 23. She also testified that the Appellant licked and rubbed his penis on her vagina. *Id*. at 28-29. Before doing this, the Appellant told her, "I'm just going to rub it on top." *Id* at 30.
>
> After these incidents, the [C]omplainant asked the Appellant why he was doing this to her to which he responded that he and the complainant were "going to get married and have kids." *Id*. at 32. Complainant testified that on another occasion, the [A]ppellant "took out his penis" and attempted to force the victim to touch it. *Id*. at 30. As enunciated by the court in ***Leatherby***, these statements and physical contact by [A]ppellant, are proof that Appellant communicated to the [C]omplainant on several occasions, both physically and verbally, for the "purpose of sexual contact." Therefore, this Court committed no error as there was sufficient evidence to sustain a conviction for Unlawful Contact with a Minor pursuant to 18 Pa.C.S.A. § 6318.

Trial Court Opinion, filed 1/10/19, at 10-11. We agree.

In viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, we find that Appellant, by his own admission in his appellate brief, communicated with the victim both verbally and physically for the purpose of engaging in illegal sexual activity. Appellant's descriptions to her of what he was about to do with his private area and why he was manipulating the victim's private area were directly related to his engaging in sexual contact with her, and these discussions

demonstrate the kind of communication contemplated by the statute. *See Commonwealth v. Velez*, 51 A.3d 260, 262 (Pa.Super. 2012) (rejecting the defendant's argument that he did not contact his victim by way of a communicative message and that his touching of her alone was not the type of contact contemplated by the statute where, despite the lack of evidence of overt verbal communication between the defendant and his victim, it was reasonable to infer that the defendant communicated with the victim, either nonverbally or verbally, where the victim was discovered by her mother nude from the waist down while the defendant performed oral sex on her).

Based upon the foregoing, we find the evidence was sufficient for the jury as the finder of fact to conclude that Appellant made statements and engaged in actions for the purpose of engaging in unlawful contact with N.W. Therefore, Appellant's claim that there was insufficient evidence to convict him of Unlawful Contact with a Minor is without merit.

Appellant next argues the trial court erred in denying defense counsel's motion for mistrial or, in the alternative, her motion to withdraw as counsel upon discovering on the third day of trial that the victim's grandfather worked in the file room of defense counsel's office. Aside from principles of law pertaining to when a trial court must grant a defendant's request for a new trial in light of a conflict of interest, Appellant sets forth just one paragraph of speculative argument in support of his position that such relief was necessary herein:

In the instant case, [A]ppellant's trial counsel actively represented [A]ppellant while at the same time there existed a personal conflict within counsel's firm. The head of the file room in counsel's office during the pendency of this case in the trial court had a close personal relationship with the complainant: he is her grandfather. Because counsel was unaware of this fact until trial had already been underway for several days, she was unable to be removed prior to the start of trial. Because of the late discovery of the complainant's relationship with her office, counsel was unable to institute screening procedures within the office to protect [A]ppellant's personal information, legal strategies and other information in the physical file or the computer database. A mistrial should have been granted so that trial counsel unburdened by such conflict could review the evidence and move forward without the possibility of such interference.

Brief for Appellant at 17-18.

An appellant cannot prevail on a conflict of interest claim without a showing of actual prejudice. ***Commonwealth v. Collins***, 598 Pa. 397, 420, 957 A.2d 237, 251 (2008). However, we presume prejudice if counsel was burdened with an "actual"—rather than "potential"—conflict of interest. ***Id***. To show an actual conflict of interest, Appellant herein must establish: 1) counsel "actively represented conflicting interests;" and 2) those conflicting interests "adversely affected his lawyer's performance." ***Id***. ***See also Commonwealth v. Hawkins***, 567 Pa. 310, 320, 787 A.2d 292, 297 (2001) (quoting ***Commonwealth v. Buehl***, 508 A.2d 1167, 1175 (Pa. 1986)).

In this regard, the trial court set forth the following:

On the third day of trial, Appellant's defense counsel learned that the complainant's grandfather, [M.J.], was the current head of the file room in defense counsel's office.[3] N.T., 07/21/17, at p. 4. In an effort to "maintain transparency," defense counsel immediately informed the [c]ourt of [M.J.'s] employment in her office. *Id*. at 4. Defense counsel advised this [c]ourt that she had

never spoken with [M.J.] about the case, and further explained to this [c]ourt that "It has in no way affected my preparation of the defense in this case." *Id*. at 4. Upon inquiry from this [c]ourt, defense counsel stated that she had no knowledge that [M.J.] had spoken to anyone in her office about the case. Accordingly, the Court took no remedial measures and proceeded with the trial. *Id*. at 5.

However, later that day, [A]ppellant's counsel moved for a mistrial or in the alternative, to withdraw as counsel due to a conflict of interest, based upon the employment of complainant's grandfather at her office. *Id*. at 70-72. She further advised this [c]ourt that, as head of the file room, [M.J.] would have had access to [Appellant's] file. Defense counsel further advised this [c]ourt that she had been working on [Appellant's] case for three (3) years and in [sic] during that time no one ha[d] spoken or advised her that the complainant's grandfather worked in their file room. Defense counsel then reiterated to this [c]ourt that this had no bearing on her preparation nor presentation of [Appellant's] case.

This [c]ourt denied defense counsel's motion for mistrial and to withdraw as counsel. *Id*. at 72-77. During argument on this motion, this [c]ourt cited two cases to support its denial of both the request for a mistrial and/or withdraw of counsel: (1) ***Commonwealth v. Buehl***, 508 A.2d 1167 (Pa. 1986) and (2) ***Commonwealth v. Collins***, 957 A.2d 237 (Pa. 2008).

In ***Commonwealth v. Beuhel*** [sic], defense counsel had previously represented a Commonwealth witness before the defendant retained him. 508 A.2d 1167, 1175 (Pa. 1986). ***Beuhl*** [sic] noted that while "prejudice is presumed when counsel is burdened by an actual conflict of interest, this is so only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" ***Id***. (quoting ***Cuyler v. Sullivan***, 446 U.S. 335, 350 (1980)). There, our Supreme Court held there was no actual conflict and the defendant therefore was not prejudiced by defense counsel's prior representation of a Commonwealth witness because the representation had terminated by the time the defendant retained him. ***Id***.

Similarly, in ***Commonwealth v. Collins***, our Supreme Court refused to find a conflict of interest. 957 A.2d 237, 250-51 (Pa. 2008). In ***Collins***, the defendant was convicted of the first - degree murder of Andre Graves. ***Id***. at 243. The defendant alleged that his trial counsel had a conflict of interest because he

- 10 -

represented Aaron Montague, a man whose car was allegedly stolen by Andre Graves before he was murdered. *Id*. at 250. According to the defendant, this presented a conflict because it put defense counsel "on notice" that Montague "had clear motive for murdering Mr. Graves." *Id*.

The Court in ***Collins*** stated that in order to show a conflict of interest, "the appellant must demonstrate that: (1) counsel 'actively represented conflicting interests'; and (2) those conflicting interests 'adversely affected his lawyer's performance.'" *Id*. at 251 (quoting ***Buehl***, 508 A.2d at 1175). There, since at the time defense counsel discovered this fact he no longer represented Montague, nor was he involved in the case, ***Collins*** held that the PCRA court did not err in failing to find an actual conflict of interest because there was "no basis upon which to presume that prejudice actually resulted from [defense counsel's] prior representation of Montague." *Id*. at 252.

Here, defense counsel did not discover the fact that the complaining witness's grandfather was employed in her office until the third day of trial. N.T., 07/21/17, p. 4. Again, defense counsel did not have any communications with [M.J.] involving this case. *Id*. at 73. Furthermore, no one in her office had spoken to her about [M.J.]. *Id*. at 73-74. As such, defense counsel did not know of [M.J.'s] employment while preparing the case and it therefore had no influence on her preparation or presentation of this case, *Id*. at 74-75. Defense counsel therefore did not "actively represent conflicting interests," nor did "those conflicting interests 'adversely affect [the] lawyer's performance.'

Moreover, there was no evidence that complainant's grandfather had viewed [A]ppellant's file nor that any prejudice had resulted from his employment at appellant's counsel's office. Accordingly, pursuant to our appellate rulings in ***Buehl*** and ***Collins***, this [c]ourt properly denied [A]ppellant's Motion for Mistrial or in the alternative to Withdraw as Counsel.

————

[3] Appellant was represented at trial by Micah A. Shender, Esquire, who worked as an Assistant Defender with the Defender's Association of Philadelphia.

Trial Court Opinion, filed 1/10/19, at 12-14.

In light of the foregoing, and upon our review of the trial transcripts, we find Appellant has failed to allege, must less show, he was actually prejudiced

by trial counsel's performance due to the victim's grandfather's employment in the filing department of trial counsel's firm. Accordingly, we find the trial court acted within its discretion in denying Appellant's motion for a mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/19