J-A07016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES SMITH | : | |
| | : | |
| Appellant | : | No. 115 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001692-2021,
CP-51-CR-0002286-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES SMITH | : | |
| | : | |
| Appellant | : | No. 116 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001692-2021,
CP-51-CR-0002286-2020

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 26, 2023**

James Smith appeals from the judgment of sentence following his convictions for rape of a child, unlawful contact with a minor, corruption of minors, involuntary deviate sexual intercourse with a child, and aggravated

indecent assault of a person less than 13 years of age.[1] He challenges the trial court's exclusion of a proposed voir dire question and the sufficiency of the evidence to sustain his conviction for unlawful contact with a minor. We affirm.

The trial court summarized the facts in this case as follows:[2]

Under docket CP-51-CR-0002286-2020, M.B. (born December 3, 2011) testified to the following facts. M.B. lived with her mother[]; her grandfather []; her sister, [J.]; and her younger brother, [L.]. At one point, M.B.'s friend A.G. and A.G.'s mother also lived in the same house. [Smith] frequently visited the home. M.B. knew [Smith] as a close friend of her mother's and called him, "Uncle James." [Smith] often took M.B., his son, A.G., and [L.] to the park and to the store alone.

M.B. recalled the first time [Smith] made her feel uncomfortable. [Smith] played games with the children, one of which involved physically lifting up the kids and throwing them onto the couch. When [Smith] lifted M.B. into the air, he did not throw her on the couch, but instead touched her vagina. [Smith] repeated this pattern of behavior throughout the house.

On a separate occasion, [Smith] grabbed M.B. from the living room and led her into the kitchen. [Smith] laid M.B. on top of a freezer and pulled down her pants. [Smith] then took off his pants and inserted his penis into her vagina. M.B. testified that she felt pain when [Smith] inserted his penis into her vagina, but neither M.B. nor [Smith] said anything to each other.

On several occasions, [Smith] performed oral sex on both M.B. and A.G. in the basement of the house. One day, [Smith] followed M.B., A.G., [L.], and his children to the basement to watch the kids play basketball. M.B. and A.G. sat on a three-to-four-foot-high black table. [Smith] approached the young girls and pulled down their pants. [Smith] proceeded to take his pants off and performed oral sex on both girls. Neither girl[] nor [Smith] spoke

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 6318(a)(1), 6301(a)(1)(ii), 3123(b), and 3125(a)(7), respectively.

[2] Smith adopted the court's factual summary for purposes of this appeal. **See** Smith's Br. at 6.

to one another. M.B. testified that this happened several times, and on one occurrence, [Smith] inserted his penis inside M.B.'s vagina. On another occasion, [Smith] inserted his penis into A.G. while M.B. sat next to her on the table. M.B. further testified that this happened several times.

[Smith's] last attempted incident with M.B. occurred on A.G.'s eighth birthday. On A.G.'s eighth birthday, M.B.'s mother left the house to run errands, leaving M.B., [L.], [J.], and [J.]'s friend behind in the house. [Smith] came to the house, picked up M.B. and led her upstairs to her mother's room. [Smith] closed the door and tried to pull down M.B.'s pants. M.B. kicked [Smith] away from her and told him to stop. M.B. told [Smith] that she was going to call her mom to which he replied, "I'll tell her for you." M.B. went into her room, grabbed her phone, and cried as she texted her mother to tell her about [Smith's] actions.

Under docket CP-51-CR-000169-2021, A.G. (born March 19, 2012) testified to the following facts. For some time, A.G. lived. . . with her mother, M.B., M.B.'s mother, M.B.'s grandfather, M.B.'s sister, and M.B.'s brother. A.G. lived at the house until she turned eight years old. A.G. and M.B. are best friends, describing their relationship as "like sisters." While A.G. lived at the house, [Smith], who A.G. also identified as "Uncle James," often visited the home. A.G. said [Smith] treated her like his own niece, even though [Smith] was not related to her. When [Smith] visited the house, he played with A.G. by picking her up in the air and playing hide-and-seek with her.

A.G. remembered that [Smith] started to do things that made her feel uncomfortable and that she did not understand. These things took place in the basement of the house, in M.B.'s grandfather's room, and M.B.'s mother's room. In the living room, [Smith] threw A.G. into the air and performed oral sex on her. This happened several times.

On another occasion, A.G. recalled being in the basement watching the other children play basketball. While both girls sat on his lap, [Smith] touched their vaginas, and penetrated A.G.'s vagina with his finger. A.G. remembered another time when [Smith] told her to get onto the black table, where she laid down on her stomach. [Smith] then pulled A.G.'s pants down and performed anal sex on her. During another time in the basement, [Smith] asked and tried to put his penis into A.G.'s mouth.

A.G. testified that she saw [Smith] also do these things to M.B. More than once, A.G. saw [Smith] insert his penis into M.B.'s vagina while M.B. laid on her back on the basement table. A.G. also testified that [Smith] tried to make M.B. perform oral sex on him. [Smith] took his penis out of his pants and "would just show it." [Smith] then told M.B. to lick his penis.

On A.G.'s eighth birthday, A.G. and her mother went to M.B.'s house where they saw police outside. After going inside of the house, A.G.'s mother came back to the car and asked A.G. whether [Smith] touched her. A.G. answered "yes."

Trial Court Opinion, filed June 1, 2022, at 1-4 (citations to trial transcript and footnote omitted).

Prior to trial, Smith submitted proposed voir dire questions to the trial court, including the question, "Are you more likely to believe the testimony of a child alleging sexual abuse because you do not believe a child could lie about sexual abuse?" The Commonwealth objected to that question. N.T., 6/22/21, at 9. The trial court agreed with the Commonwealth and excluded that question from jury selection. *Id.* at 10.

After a jury trial, Smith was convicted of the above-referenced offenses. He was sentenced to an aggregate term of 30 to 60 years' incarceration followed by 10 years' probation. This appeal followed.

Smith raises the following two issues:

1. Did not the trial court deprive [Smith] of his right to a fair and impartial jury by refusing to ask prospective jurors on voir dire whether they believed a child could lie about being sexually abused, which prevented [Smith] from potentially uncovering prejudicial biases or fixed opinions that would have disqualified jurors from serving?

2. Was not the evidence insufficient to convict [Smith] of both counts of 18 Pa.C.S.[A] § 6318, unlawful contact with a minor, where there was no evidence that he had any contact or

- 4 -

communication with the two children as contemplated by the statute?

Smith's Br. at 3.

First, Smith argues that the trial court's exclusion of his proposed voir dire question violated his right to a fair and impartial jury. Smith's Br. at 13. He notes that the Commonwealth's entire case hinged on M.B. and A.G.'s testimony, which was uncorroborated by physical or medical evidence. *Id.* at 10. Therefore, he argues that the jury's verdict would necessarily rest on its evaluation of the victims' credibility. *Id.* Smith contends that he had the right to explore whether any prospective jurors had a preconceived belief that a child would not lie about being sexually abused. *Id.* at 14-15. He emphasizes that allegations of child sexual abuse, such as those in this case, may carry significant emotional impact which may make a juror incapable of rendering a fair verdict. *Id.* at 14. Smith further argues that certain jurors may be predisposed to credit a child victim's testimony simply because of the victim's young age. *Id.* He thus maintains that the court erred by failing to pose his proposed question or make a comparable inquiry. *Id.* at 20.

The purpose of voir dire is to aid the empaneling of a "competent, fair, impartial, and unprejudiced jury[.]" ***Commonwealth v. Holt***, 273 A.3d 514, 546 (Pa. 2022) (citation omitted). "The decision on whether or not counsel may propose their own questions of potential jurors during voir dire is a matter left solely within the discretion of the trial court." ***Commonwealth v. Paolello***, 665 A.2d 439, 451 (Pa. 1995). The trial court's decision "will not be reversed on appeal absent palpable error." ***Holt***, 273 A.3d at 547. "[V]oir dire

is not to be used to attempt to ascertain a prospective juror's present impressions or attitudes." ***Commonwealth v. Ritter***, 615 A.2d 442, 447 (Pa.Super. 1992) (citation omitted). Nor may attorneys use it "to ascertain the effectiveness of potential trial strategies." ***Paolello***, 665 A.2d at 451.

Here, the trial court found that the proposed voir dire question was improperly intended to gain insight into the juror's present impressions about how they would weigh M.B. and A.G.'s testimony. Trial Ct. Op. at 10-11. The court found that because it gave prospective jurors a proper instruction during voir dire on how to evaluate witness credibility, no error occurred from its refusal to allow Smith's proposed question. ***Id.*** at 11.

The trial court did not abuse its discretion in excluding Smith's proposed question. The question wholly involved the victims' credibility, was essentially argumentative, and impermissibly sought to gauge jurors' receptiveness to possible defense strategies. ***See Ritter***, 615 A.2d at 447; ***Paolello***, 665 A.2d at 451. Moreover, the court's other questions and statements to potential jurors adequately addressed concerns about prospective jurors' ability to be impartial. The court informed the members of the panel that they would be asked to determine if witnesses were "telling the truth, lying or simply mistaken." N.T., 6/22/21, at 15. It explained that they would do so "considering what were their opportunities to see, hear or understand a particular fact or incident and determine if a witness is credible," and that they were to do so using "the same standard for everyone, regardless of a person's

status of what they do for a living." *Id.*[3] It then advised them that Smith was charged with sexually abusing two children between the ages of six and eight and asked if they could be fair and impartial considering the nature of the charges. *Id.* at 20-22. Smith offers no authority mandating that courts ask prospective jurors whether they believe a victim of a particular category of crime could lie, and we are aware of none. Instead, he cites cases upholding challenges to the denial of voir dire questions relating to potentially controversial social issues, such as racial and law enforcement prejudice, tort reform, and sexual orientation, that could affect jurors' overall ability to be impartial. Accordingly, the court did not abuse its discretion in excluding Smith's question from voir dire.

Smith next argues that the evidence was insufficient to support his conviction for unlawful contact with a minor under 18 Pa.C.S.A. § 6318.[4]

---

[3] The court stated:

> You will be asked to evaluate the credibility of the testimony of witnesses as to their truthfulness and accuracy. In other words, you will determine if they're telling the truth, lying or simply mistaken.

> You will do this considering what were their opportunities to see, hear or understand a particular fact or incident and determine if a witness is credible[. Y]ou are to use the same standard for everyone, regardless of a person's status of what they do for a living.

N.T., 6/22/21, at 15.

[4] Smith does not challenge the sufficiency of the evidence underlying his remaining convictions. *See* Smith's Br. at 20.

Smith's Br. at 20. He maintains that the statute "punishes communications aimed at enticing a minor to engage in sexual acts" and he "communicated nothing to the [victims] for the purpose of luring them or enticing them sexually before he abused them repeatedly." *Id.* at 11. Smith argues the only times he uttered any words to M.B. and A.G. "were after he had already sexually assaulted each of them multiple times." *Id.* at 21. He states that the crime of unlawful contact with a minor "is complete at the time of the communication and is distinct from subsequent sexual assaults or attempts." *Id.* at 11-12. Otherwise, according to Smith, the statute results in virtually every individual who sexually assaults a child being automatically guilty of the additional crime of unlawful conduct with a minor. *Id.* at 25.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). The trier of fact is free to believe, all, part, or none of the evidence presented when making credibility determinations. *Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa.Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where

the record contains support for the convictions, they may not be disturbed."

***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa.Super. 2016).

The crime of unlawful contact with a minor is defined, in relevant part,

as intentional contact with a minor "for the purpose of engaging in" certain

prohibited activity:

> **(a) Offense defined.**--A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318(a)(1).

The statute defines "contacts" as "[d]irect or indirect contact or

communication by any means":

> Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c).

The "contact" element can be satisfied by communication, either verbal

or non-verbal, and the statute does not require that events occur in any

particular sequence. That is, the "contact" may occur before, at the beginning

of, or during other conduct, so long as it is "for the purpose of engaging in" an enumerated offense:

> [T]he crime of [u]nlawful [c]ontact with a [m]inor focuses on communication, *verbal or non-verbal*, and does not depend upon the timing of the communication. Thus, it matters not whether the communication occurred at the outset of or contemporaneously with the contact; once the communicative message is relayed to a minor, the crime of unlawful contact is complete. Thus, the statute is best understood as "unlawful *communication* with a minor," for by its plain terms, it prohibits communication with a minor for the purpose of carrying out certain sex acts.

***Commonwealth v. Davis***, 225 A.3d 582, 587 (Pa.Super. 2019) (emphasis in original) (internal citation omitted).

Here, the court found the evidence was sufficient to sustain Smith's conviction for unlawful contact with a minor as to M.B. It determined that Smith instructing M.B. to perform oral sex on him, physically taking M.B. to another room to perform sexual acts on her, taking her clothes off, and taking his clothes off constituted verbal and non-verbal communications for the specific purpose of engaging in sexual conduct with a child. Trial Ct. Op. at 9. Similarly, the court found the evidence was sufficient to support Smith's conviction for unlawful contact with a minor as to A.G. ***Id.*** A.G. testified that Smith told her to lay on a table on her stomach and then he anally raped her. ***Id.*** Smith also instructed A.G. to perform oral sex on him. ***Id.*** The court found that Smith's "commands were verbal precursors to illicit sexual acts with A.G.[,]" and his "actions clearly demonstrate[d] the type of communication and contact covered under the statute." ***Id.***

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we find that the evidence was sufficient to prove that Smith communicated with the victims both verbally and physically for the purpose of engaging in illegal sexual activities. By his own admission in his appellate brief, Smith asked both M.B. and A.G. to perform oral sex on him and told A.G to lay on a table immediately before sexually assaulting her. **See** Smith's Br. at 21. These statements demonstrate the type of communication contemplated by the statute.

Smith's argument that application of Section 6318 results in virtually every individual who sexually assaults a child being automatically guilty of the additional crime of unlawful conduct with a minor is erroneous. This Court has held that evidence that a defendant engaged in sexual contact with a minor, by itself, is insufficient to support an unlawful contact with a minor conviction. **See Commonwealth v. Leatherby**, 116 A.3d 73, 80 (Pa.Super. 2005) (vacating unlawful contact with a minor conviction as to minor who testified only that defendant came into her room and touched her breasts and buttocks without saying anything).[5] Rather, to sustain a conviction under Section 6318, the defendant must have been in some contact or communication with the victim for the purpose of engaging in specified prohibited conduct. Here, the

---

[5] **See also Commonwealth v. Letham**, No. 1259 WDA 2020, 2022 WL 122460, at *4 (Pa.Super. filed January 13, 2022) (unpublished mem.) (vacating unlawful contact with a minor conviction where evidence was that defendant came into a room where minor was standing and immediately grabbed her breasts without saying anything or positioning her in anyway).

evidence established Smith communicated with M.B. and A.G. for the purpose of sexually assaulting them. Therefore, the evidence was sufficient to prove the "contact" element of the crime of unlawful contact with a minor. Smith's sufficiency claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2023