J-S09008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE KARAGIANNIS | : | |
| | : | |
| Appellant | : | No. 1305 EDA 2023 |

Appeal from the Judgment Entered March 3, 2023
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0001038-2020

BEFORE: PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 20, 2024**

George Karagiannis appeals from his judgment of sentence imposed for, *inter alia*, two counts of aggravated indecent assault and four counts of unlawful contact with a minor related to sexual offenses. Karagiannis's counsel filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967). In his ***Anders*** brief, counsel moves to withdraw as counsel and asserts the sufficiency claims Karagiannis seeks to raise are frivolous. We agree there are no non-frivolous issues for Karagiannis to raise on appeal. We therefore grant counsel's request to withdraw and affirm Karagiannis's judgment of sentence.

As the ***Anders*** brief forwards claims challenging the sufficiency of the evidence, we outline the factual history of the case relevant to those sufficiency claims in some detail. Karagiannis was charged with numerous offenses, including rape of a child, statutory sexual assault and four counts of

unlawful contact with a minor related to sexual offenses, after C.S. reported Karagiannis had sexually assaulted her and her half-sister, K.C. At the time of the assault, C.S. was 12 years old and K.C. was 13 years old. Karagiannis was 27 years old. The matter proceeded to a jury trial.

C.S. testified at trial. She recounted that in May 2020, she was at her mother's house with K.C. The two were on a social media site known as Omegle late at night and messaging with a stranger who identified himself as "John M." N.T., 11/8/2022, at 87. John M. was later identified as Karagiannis.

Karagiannis represented to C.S. that he was 17 years old. *See id.* at 89. C.S. testified that she and K.C. sent Karagiannis pictures of their exposed breasts, backside, and genitals after Karagiannis requested that they do so. *See id.* at 90-91. K.C., who testified after C.S., reported these pictures were sent on Snapchat. *See id.* at 127-128.

According to C.S., the three arranged to meet late that night at a park near the girls' mother's house. *See id.* at 95. Because Karagiannis would be traveling some distance, C.S. testified Karagiannis told the girls he was expecting "two or nothing." *Id.* at 92. C.S. took that to mean they would be engaging in "inappropriate behavior." *See id.* at 92-93. Karagiannis asked the girls to wear dresses. *See id.* at 91.

C.S. and K.C. went to the park and Karagiannis arrived in a truck. *See id.* at 98, 100. C.S. and K.C. were on a bench in a gazebo. C.S. testified that Karagiannis approached the two girls and asked them to touch his genitals

- 2 -

over his clothes, which C.S. stated they did. *See id.* at 101. According to C.S., Karagiannis then led the girls to his truck and all three sat in the front seat of the truck. Karagiannis drove the girls to a dark place behind a baseball field. *See id.* at 104-105. C.S. testified that the three of them talked but it did not "stay as just talking." *Id.* at 105.

Instead, C.S. testified, Karagiannis kissed both her and K.C. and had his hands on their chest while he was kissing them. *See id.* at 105-106. C.S. stated that Karagiannis reclined the truck seat back and took some of her clothes off. *See id.* at 107, 110. C.S. recounted that Karagiannis touched her genitals with his fingers, both on the inside and outside of her genitals. *See id.* at 108.

At that point, C.S. testified, Karagiannis's genitals touched her genitals but "it didn't fit" and "it didn't go in all the way." *Id.* at 109. C.S. shared that it did hurt, though, and she told Karagiannis as much. *Id.*

C.S. testified Karagiannis then did the "same thing" to K.C., with Karagiannis's genitals touching K.C.'s genitals. *Id.* at 111. After K.C. said "ow too many times," C.S. told Karagiannis to stop. *Id.* at 111-112. Karagiannis then shoved the girls' heads near his genitals, but both girls said "no." *See id.* at 112. According to C.S., at that point, Karagiannis drove her and K.C. back to the park and they ran home. *See id.* at 113. C.S. identified Karagiannis in the courtroom as the person who assaulted her and K.C. *See id.* at 101.

As noted above, K.C. testified next. She stated she and C.S. were on C.S.'s phone and messaging with a stranger, later identified as Karagiannis. *See id.* at 127-128. K.C. reported that she sent pictures of her body parts to Karagiannis after he asked her to do so. *See id.* at 127. Using a blank line drawing of a female, K.C. circled the chest and genital area when asked what parts of the body were in those photographs. *See* N.T., 11/8/2022, at 130-131; Cmwlth. Ex. 5.[1] She also testified that Karagiannis sent a photo to her and C.S, and using a blank line drawing of a male, K.C. circled the genital area when asked what body part was in that photo. *See* N.T., 11/8/2022, at 133; Cmwlth. Ex. 6.

K.C. also testified that she, C.S., and Karagiannis talked about meeting up and discussed what would happen when they did so. According to K.C. that included all three of them "using those things [she] circled." N.T., 11/8/2022, at 135.

K.C. stated she and C.S. met Karagiannis at the park. He drove them to a dark, wooded area, and talked to them on the way there. *See id.* at 139-140. K.C. indicated Karagiannis began touching her with his hand. Using a line drawing of a female, K.C. circled the genital area when asked what part of her body Karagiannis touched with his hand. *See id.* at 143, Cmwlth. Ex. 7. She

---

[1] Understandably, K.C. had difficulty testifying about the assault and agreed it would be easier for her to answer questions using blank line drawings of bodies.

stated Karagiannis touched her genitals on the inside. *See* N.T., 11/8/2022, at 143.

Using a line drawing of a male, K.C. circled the genital area, and using a line drawing of a female, K.C. again circled the genital area when asked if another part of Karagiannis's body touched another part of her body. *See id.* at 144-146, Cmwlth. Exs. 8, 9. She said when the two body parts touched, they touched on the "inside" and it "kind of hurt." N.T., 11/8/2022, at 146.

According to K.C., she saw the "same stuff" happen to C.S. *Id.* at 147. K.C. testified that "all this stuff [she] just described" was what she, C.S., and Karagiannis were talking about when they were initially discussing on social media what they would do when they met at the park. *Id.* at 151.

K.C. also identified Karagiannis in the courtroom as the person who assaulted her and C.S. *See id.* at 148.

Agent Kathleen Fallon, a special agent with the Pennsylvania Office of the Attorney General who was one of the investigators on this case, also took the stand. She recounted that Karagiannis initially contacted C.S. and K.C. on Omegle and then they moved to Snapchat. *See* N.T., 11/9/2022, at 158. Agent Fallon also reported that two cell phones were recovered from Karagiannis. *See id.* at 217, 231. However, neither the actual chats between Karagiannis and the girls or the naked images the girls sent to Karagiannis were recovered. *See id.* at 239. Agent Fallon did not find this odd because "they were through Snapchat and Omegle," which have features, such as

disappearing images, which did not make this unusual based on her training and experience. ***Id.***

Police Officer Michael Leighton, a former police officer with Summit Hill Borough who also investigated the assault while employed by Summit Hill Borough, testified as well. He explained that both K.C. and C.S. positively identified Karagiannis from a photo array as the man who sexually assaulted them. ***See id.*** at 37, 39.

The jury convicted Karagiannis of two counts of aggravated indecent assault, two counts of corruption of minors, one count of sexual abuse of a child, one count of criminal use of a communication facility, one count of unlawful contact with a minor related to sexual abuse of a child and four counts of unlawful contact with a minor related to sexual offenses. Two of the latter unlawful contact convictions, relevant to this appeal, were for unlawful contact with a minor (C.S.) for purposes of rape of a child and unlawful contact with a minor (K.C.) for purposes of statutory sexual assault. ***See*** Jury Verdict Slip, 11/10/2022, at 2. The jury acquitted Karagiannis of rape of a child with respect to C.S. and statutory sexual assault with respect to K.C.

The trial court sentenced Karagiannis to an aggregate sentence of 14 to 31 years' imprisonment, followed by three years of probation. Karagiannis was also ordered to register as a sex offender for the remainder of his life.

Karagiannis filed timely post-sentence motions, and the trial court entered an order directing counsel to file briefs and scheduling a hearing on

the motions. Karagiannis, however, withdrew his post-sentence motions on April 24, 2023. The trial court entered an order on May 12, 2023, rescinding its order for a hearing and advising Karagiannis that he had 30 days to file a notice of appeal. Karagiannis filed a notice of appeal on May 19, 2023.

The trial court directed Karagiannis to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his statement, Karagiannis asserted that the evidence was insufficient to establish that he had intentionally contacted either C.S. or K.C. for the specific purpose of engaging in sexual intercourse and the Commonwealth had therefore not proven he had unlawful contact with C.S. for purposes of rape of a child or with K.C. for purposes of statutory sexual assault. In its responsive opinion, the trial court flatly rejected Karagiannis's sufficiency challenges and found that the jury could have reasonably inferred from the totality of the evidence that Karagiannis communicated with the victims for the purpose of engaging in sexual intercourse.

Counsel filed an **Anders** brief and petitioned this Court to withdraw from representation. Before we can conduct a review of any issues identified by counsel on appeal, we must first determine that counsel has met certain threshold procedural requirements related to his **Anders** brief and his petition to withdraw. **See Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007).

When counsel seeks to withdraw from representation, as counsel does here, counsel "must petition the court for leave to withdraw stating that after making a conscientious examination of the record [counsel] has … determined that the appeal would be frivolous[.]" **Commonwealth v. Millisock**, 873 A.2d 748, 751 (Pa. Super. 2005) (citation omitted). Counsel must also file an **Anders** brief that "(1) provide[s] a summary of the procedural history and facts …; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; and (3) set[s] forth counsel's conclusion that the appeal is frivolous [and the reasons for that conclusion]." **Commonwealth v. Orellana**, 86 A.3d 877, 879-880 (Pa. Super. 2014) (citation omitted).

Counsel must also furnish the appellant with a copy of the **Anders** brief along with a letter advising the appellant of his rights. **See id.** at 880. Specifically, that letter must generally advise the appellant of his right to: (1) retain new counsel; (2) proceed *pro se* with the appeal; or (3) bring any issues to this Court's attention in addition to the points raised in counsel's **Anders** brief. **See id.**; **Millisock**, 873 A.2d at 751-752. Counsel is to attach a copy of the letter sent to the appellant to counsel's application to withdraw. **See Millisock**, 873 A.2d at 752.

Here, counsel's **Anders** brief, a copy of which was sent to Karagiannis, clearly complies with the procedural requirements listed above. While counsel did not file a separate application to withdraw from representation, counsel requests to withdraw from representation in his **Anders** brief after stating that

any appeal by Karagiannis would be frivolous. *See Anders* Brief, at 24.[2] In addition, counsel has attached a copy of the letter sent to Karagiannis to his *Anders* brief and we find this letter substantially complies with *Millisock*. Karagiannis did not file a response.

Given that counsel's *Anders* brief and letter to Karagiannis substantially comply with the procedural requirements outlined above, we turn to our own review of the appeal to determine if it is wholly frivolous. We agree with counsel that there are no non-frivolous issues for Karagiannis to raise on appeal.

In his *Anders* brief, counsel forwards two sufficiency claims Karagiannis wishes to raise on appeal. Namely, Karagiannis maintains the Commonwealth failed to present sufficient evidence to establish that he communicated with C.S. and K.C. for the purpose of having sexual intercourse with them. As such, Karagiannis argues, there was insufficient evidence that he either had (1) unlawful contact with C.S. for the purpose of committing rape of a child or (2) unlawful contact with K.C. for the purpose of committing statutory sexual assault. We agree with counsel that the trial court did not err by concluding these claims are without merit.

_____

[2] The preferred practice is for counsel to file a separate application to withdraw from representation. However, counsel's petition to withdraw in the *Anders*' brief is sufficient and we will treat it as an application to withdraw.

When reviewing a challenge to the sufficiency of the evidence, we must determine whether, when viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial and all reasonable inferences derived from the evidence was sufficient to establish all the elements of the offense beyond a reasonable doubt. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). The Commonwealth may sustain its burden entirely by circumstantial evidence. *See id.* Moreover, the entire record and all evidence received must be considered. *See Commonwealth v. Watkins*, 843 A.2d 1203, 1211 (Pa. 2003).

To sustain a conviction for unlawful contact with a minor, the Commonwealth must prove the defendant was intentionally in contact with a minor for purposes of engaging in an activity prohibited under any of the offenses under Chapter 31 (relating to sexual offenses). *See* 18 Pa.C.S.A. § 6318(a)(1). Rape of a child and statutory sexual assault are two of those Chapter 31 offenses. Rape of a child occurs when the defendant has sexual intercourse with a victim who is less than 13 years of age. *See* 18 Pa.C.S.A. § 3121(c). Statutory sexual assault, meanwhile, occurs when the defendant has sexual intercourse with a victim under the age of 16 and the defendant is 11 or more years older than the victim. *See* 18 Pa.C.S.A. § 3122.1(b).

As the trial court pointed out, the conduct prohibited by Section 6318 focuses on communication, verbal or nonverbal, and "once the communicative message is relayed to a minor, the crime of unlawful contact is complete."

Trial Court Opinion, 6/30/2023, at 6 (*quoting* **Commonwealth v. Davis**, 225 A.3d 582, 587 (Pa. Super. 2019)). As such, "Section 6318 does not require that a defendant even be charged with, let alone convicted of, any underlying substantive offense for which he contacted the minor." **Id.** at 7 (*quoting* **Commonwealth v. Aikens**, 168 A.3d 137, 141 (Pa. 2017)).

> For purposes of Section 6318, "contacts" is defined as:
>
> Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c).

Contact requires proof that the defendant engaged in some verbal or nonverbal communication with the victim for purposes of sexual contact beyond the physical contact of the sexual act itself. **See Commonwealth v. Velez**, 51 A.3d 260, 267 (Pa. Super. 2012). In **Velez**, this Court found that a fact-finder can reasonably infer that a defendant engaged in such verbal or nonverbal communications for the purpose of engaging in a sexual offense from the circumstances surrounding the offense at hand. **See id**. To that end, the **Velez** Court found sufficient evidence of communication for purposes of unlawful contact with a minor on the basis that, even though there was no evidence of an overt communication between the defendant and the victim, it was reasonable to infer the defendant verbally or nonverbally communicated with the victim for purposes of engaging in a sexual offense where the victim

was discovered by her mother naked from the waist down with the defendant's head between her legs. ***See id.***

Here, we see no error in the trial court's conclusion that, based on the circumstances here, the jury reasonably inferred that Karagiannis contacted the two girls over social media for the purpose of engaging in sexual intercourse with them. Both girls testified they exchanged messages with Karagiannis on social media and traded explicit photographs of their genitalia. K.C., C.S., and Karagiannis agreed to meet at a local park late at night and they discussed what would happen when they met. Karagiannis told the girls to wear dresses and that he expected "two or nothing" when they met up at the park. C.S. and K.C. testified they understood this to mean sexual activity. In fact, as the trial court pointed out, "K.C. confirmed that what actually occurred [including attempted sexual intercourse] when they met is what they had discussed would happen." Trial Court Opinion, 6/30/2023, at 9.

It is true that K.C. and C.S. did not explicitly testify in so many words that Karagiannis contacted them and told them he wanted to meet them at the park so he could have sexual intercourse with them. However, we agree with the trial court that, viewing the evidence in the light most favorable to the Commonwealth, it was reasonable for the jury to infer from the girls' testimony that this was the goal of Karagiannis's communications with them.

Even if the overt communications between Karagiannis and the girls were insufficient to establish unlawful contact for purpose of engaging in

sexual intercourse, we agree with the trial court, Karagiannis's counsel, and the Commonwealth that it could be reasonably inferred from Karagiannis's physical interactions with K.C. and C.S., pursuant to **Velez**, that Karagiannis engaged in communication with K.C. and C.S for the purpose of getting K.C. and C.S to have sexual intercourse with him.

As counsel aptly states in his **Anders** brief:

[C.S. and K.C.'s testimony] established that [Karagiannis] engaged in conversation with the two minors in order to meet with them in a secluded place. He asked them to wear dresses, arguably to make their lower bodies more accessible. They sent him photographs depicting their naked chests, buttocks, and pubic areas. Initially, he asked them to touch his genitals over his clothing. In the truck, both K.C. and C.S. stated that [after reclining the truck's front seat to position them for the assault, Karagiannis] touched their vaginal areas with his fingers and unsuccessfully attempted to penetrate them with his penis. All of these actions were performed, according to the two girls, while there was conversation. These facts meet the assumption language set forth in **Velez**.

**Anders** Brief at 21-22 (citation to notes of testimony omitted).

Accordingly, counsel maintains the trial court did not err in concluding the jury reasonably inferred that Karagiannis engaged in the kind of communication contemplated by Section 6318 with C.S. and K.C for the purpose of engaging in sexual intercourse. As such, counsel concludes the sufficiency claims are frivolous.

We agree with counsel that the sufficiency claims Karagiannis wishes to raise on appeal are without merit. We have reviewed the record and do not discern any other claims that are non-frivolous. Accordingly, we grant

counsel's application to withdraw and affirm Karagiannis's judgment of sentence.

Request to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/20/2024